```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/18/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

SOONJA SON, MI AE KANG, and :
IN HYEONG SUR, on behalf of themselves :
and all others similarly, situated, :
                                    :

                          Plaintiffs, :
                                    :

           - against - :
                                    :

HAND HOSPITALITY, CHO DANG GOL, LLC, :
TOLEDO 53 INC., YEONKHEE KIM, :
CHANGHONG MIN, and KIHYUN LEE, :
                                    :

                      Defendants. :

---------------------------------------------------------------X

22-CV-4639 (RWL)

**DECISION AND ORDER:
MOTION FOR
<u>CONDITIONAL CERTIFICATION</u>**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

       Plaintiffs, former employees of Defendants' Korean restaurant named Cho Dang Gol, filed this action against Defendants claiming violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), through a common policy and practice of not paying Plaintiffs and other similarly situated employees for all the hours they worked, not paying all overtime hours worked, improperly retaining tips belonging to employees, and failing to provide accurate pay statements listing their true hours worked or correct amount of tips. Before the Court is Plaintiffs' motion for an order (1) conditionally certifying the FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b); (2) approving Plaintiff's proposed form and manner of notice to potential opt-in plaintiffs; and (3) equitably tolling the statute of limitations for potential opt-in plaintiffs. For the reasons that follow, Plaintiffs' motion is GRANTED in part and DENIED in part.

**Factual Background**[1]

**A.    Defendants:  The Owners And Managers**

Hand Hospitality LLC operates 13 restaurants in New York, one of which is Cho Dang Gol located at 55 West 35th Street in New York City (the "Restaurant"). (AC ¶¶ 9, 12.)  Corporate entities Cho Dang Gol LLC and Toledo 53 Inc. operate the Restaurant as well.  (*Id.* ¶¶ 10-11.)  Individual Defendant Kihyun Lee is the sole owner of the Restaurant, and Chanhong Min is its general manager.  (*Id.* ¶¶ 13-14.) Yeonghee Kim is a manager and captain of servers.  (*Id.* ¶ 15.)  Plaintiffs claim that each of the individual Defendants exercised sufficient control to qualify as Defendants' employer, along with the corporate Defendants.  (*Id.* ¶¶ 13-15.)

**B.    Plaintiffs: The Servers And Kitchen Worker**

Named Plaintiff Soonja Son ("Son") worked as a server at the Restaurant from approximately May 4, 2021 to December 6, 2023.  (Son Decl. ¶¶ 3-4.)  As a server, her duties included greeting customers, serving food, cleaning tables, handling payments, and other tasks.  (*Id.* ¶¶ 4-5.)  Son typically worked 3 to 5 days per week, although for a two-month period in the summer of 2021 she typically

---

[1]  The factual background is drawn from the First Amended Complaint filed September 29, 2023 (Dkt. 53) ("AC"); the declarations of Soonja Son (Dkt.80-3) ("Son Decl."); Mi Ae Kang (Dkt. 80-4) ("Kang Decl."); Hyeong Sur (Dkt. 80-5) ("Sur Decl."); Kyo Ok Goo (Dkt. 80-6) ("Goo Decl."); Heesun Hwang (Dkt. 80-7) ("Hwang Decl."); Juan Carlos Vazquez (Dkt. 80-8) ("Vasquez Decl."); Bosung Park (Dkt. 80-9) ("Park Decl."); and Marlena Smith (Dkt. 80-1) ("Smith Decl.").  The Goo, Hwang, and Vazquez Declarations were originally filed in other cases against Defendants in which those three former employees are plaintiffs.   In their opposing brief, Defendants refer to "certifications" of Kihyun Lee, Yeonhee Kim, and Chanhong Min.  (Def. Opp. at 7.)  No certifications or other statements of those three individual Defendants appear in the record, and Defendants have not submitted any other factual evidence in opposition to the motion.

worked 6 days per week.  (*Id.* ¶¶ 6-7.)  Son regularly was required to start working before clocking in for her shift, typically 30 minutes earlier.  (*Id.* ¶ 8.)  She typically worked 33 to 55 hours per week (66 hours per week for the two-month period she worked 6 days a week) but did not receive her "full" overtime compensation for work in excess of 40 hours per week.  (*Id.* ¶¶ 10, 12.)  She also "was not always paid the correct spread of hours."  (*Id.* ¶ 11.)  Son asserts that Defendants "would adjust the number of hours [she] had worked" and did not pay her accurately for all the hours she worked.  (*Id.* ¶ 13.)  She recalls that general manager Chanhong Min "posted [in the servers group chat room] that time records were artificially adjusted."  (*Id.* ¶ 25.)  Moreover, Defendants deducted one to one-and-a-half hours each day for break time, regardless of whether Son worked during breaks, which she sometimes did.  (*Id.* ¶ 20.)  Son was paid at a rate of $10.00 per hour, followed by raises to $12.00, $14.00, and $15.00 per hour.  (*Id.* ¶¶ 14-15.)  Although Son was a tipped employee, Defendants retained portions of tips earned each day.  (*Id.* ¶ 16.)  Defendants did not provide Son with documentation accounting for daily tip pools collected.  (*Id.* ¶ 18.)  Defendants also did not provide Son with accurate pay statements and "did not always" provide her with an accurate wage notice when her rate of pay changed.  (*Id.* ¶¶ 21-22.)

Named Plaintiff Kang worked as a server at the Restaurant from approximately July 11, 2021 through July 5, 2023.  (Kang Decl. ¶¶ 3-4.)  Kang was subject to most of the same pay practices as Son; *i.e.*, Kang did not receive full overtime compensation for work in excess of 40 hours per week (*id.* ¶ 13); she was not always paid the correct amount for spread of hours (*id.* ¶ 12); Defendants

"adjust[ed] the number of hours" she worked and did not pay her accurately for all the hours she worked (*id.* ¶¶ 14-15); Defendants deducted one to one-and-half-hours for break time even when Kang did not take a break (*id.* ¶ 9); Defendants retained portions of tips that she had earned (*id.* ¶¶ 18-20); and Defendants did not provide Kang with either accurate pay statements listing her hours worked, rate of pay, any minimum wage allowances, and the correct amount of tip wages, or accurate wage notices when her rate of pay changed (*id.* ¶¶ 21-22).

Named Plaintiff Sur worked in the kitchen at the Restaurant from approximately April 2018 through December 10, 2022. (Sur. Decl. ¶¶ 3-4.) For two periods of time, Sur was paid a weekly amount regardless of the hours she worked; from approximately April 2018 through March 2020, she received $950-$975 per week while working 40 to 45 hours per week, and from approximately February 2022 through the end of her employment in December 2022, she received $1120-$1130 per week even though she worked as few as 32 hours per week and as many as 60 hours per week. (*Id.* ¶¶ 7, 11-13.) Between March 2020 and February 2022 (i.e., during the Covid-19 pandemic period), Sur worked part-time and was paid hourly at a rate of $25 per hour following a raise.[2] (*Id.* ¶ 8, 10.) However, Sur typically was paid in cash and charged a 25% "cash conversion fee," thus reducing her pay by 25%. (*Id.* ¶ 15.)

Even though she worked in the back-of-house, Sur was subject to some of the same practices as Soo and Kang who worked in the front-of-house. Specifically, Defendants sometimes "adjust[ed] the number of hours" she had worked, which

---

[2] Sur does not indicate what her hourly rate was prior to the raise to $25 per hour.

4

resulted in her not always being paid accurately for all the hours she worked when paid on an hourly basis (*id.* ¶ 9); Sur did not receive full overtime compensation for work in excess of 40 hours per week (*id.* ¶ 19); she did not receive full spread of hours pay when she worked more than 10 hours in a day (*id.* ¶ 20); and she did not always receive accurate wage statements and notices (*id.* ¶¶ 21-22). Sur does not assert that Defendants deducted time for breaks even when she worked during them, but instead asserts that she did not receive any breaks. (*Id.* at 17.)

Soo, Kang, and Sur each aver that based on discussions with co-workers, they know that other servers, bussers, hosts, and kitchen workers who "performed similar work," and who, like Plaintiffs, were not paid minimum wage, overtime wage, spread of hours pay, or all their tips. (Son Decl. ¶ 29; Kang Decl. ¶ 28; Sur Decl. ¶ 24.) However, the only co-workers they specifically identify by name as having been subject to those practices – as distinct from simply being co-workers – are each other.[3] (*See* Son Decl. ¶¶ 29-31; Kang Decl. ¶¶ 28-31; Sur Decl. ¶¶ 23-25.)

## C. Employee Declarants From Other Actions

In addition to their own declarations, Plaintiffs have submitted declarations from three plaintiffs in two other cases against Hand Hospitality and some of the other Defendants.[4] One of the declarations comes from Kyo Ok Goo, who is the

---

[3] Son identifies by name four individuals she recalls as being "other employees" but does not specifically say that those individuals were subject to the same pay practices. (Son Decl. ¶ 30.) In contrast, she identifies Kang and Hwang as servers she spoke to about not getting paid properly. (*Id.* ¶ 29.)

[4] The two cases, both in the Southern District of New York, are *Juan Carlos Vazquez, et al. v. Hand Hospitality LLC (d/b/a Hand Hospitality), et al.*, 20-CV-5328 (ER) (the "Vazquez Action"), which is closed, and *Kyu Ok Goo, et al. v. Hand Hospitality LLC, et al.,* 23-CV-8235 (VSB) (the "Goo Action"), which is active.

named plaintiff in an action filed almost a year after the instant one.  Goo was a line cook at the Restaurant from approximately 2014 through May 2023.  (Goo Decl. ¶¶ 1-2.)  Goo asserts that she was subject to pay practices that are the same as some those described by Sur, who also worked in the kitchen.  In short, Goo states that while working at the Restaurant, she was not paid for all hours worked; she was paid a daily rate; that manager Yeonhee Kim punched in and out for Goo so that her start and stop times were not always accurate; she sometimes worked during her breaks; she was not paid one-and-a-half times her hourly rate for overtime work in excess of 40 hours per week; and for a period of time during the Covid-19 pandemic she was paid at an hourly rate of $15, later raised to $19, from which a 25% "cash conversion fee" was withheld.  (*Id.* ¶¶ 4-11.)  Goo also states that her net pay remained $150 per day despite changes in her hourly rate.  (*Id*. ¶ 12.)

Goo's co-plaintiff is Heesun Hwang, who worked as a server at the Restaurant for several months in 2021 and again from approximately May 31, 2022 through September 17, 2023.  (Hwang Decl. ¶¶ 1-2.)  Hwang describes pay practices that are similar to some of those described by servers Soo and Kang.  In particular, Hwang states that she was paid less than the minimum wage as a tipped employee; Defendants nevertheless retained portions of the tips she earned; Defendants did not provide documentation accounting for the tips collected; Defendants deducted one to one-and-a-half hours each day from her reported hours even when she did not take a break; and Defendants did not provide her with accurate wage statements.  (*Id.* ¶¶ 7-20.)  Unlike Soo, Kang, and Sur, Goo does not claim to know what pay practices were applied to her co-workers, while Hwang

asserts that she knows other employees did not receive all the tips they earned but does not identify any of them.  (Hwang Decl. ¶ 10-14; *see generally* Goo Decl.)

Finally, in a third lawsuit, filed about two years earlier than the instant action, the lone named plaintiff is back-of-house employee Juan Carlos Vasquez, who worked for several years at several different restaurants in Defendant's chain of restaurants.  (Vasquez Decl. ¶¶ 6-7.)  He worked at the Restaurant, the only restaurant at issue here, for just three weeks in May to early June 2020.  (*Id.* ¶ 12.) During that time, Vasquez typically worked 60 hours per week and received a fixed salary of $400 per week and then $600 per week.  (*Id.* ¶¶ 12, 28-29.)  Defendants never paid Vasquez overtime for work in excess of 40 hours per week.  (*Id.* ¶ 32.) And, they did not provide him with proper wage notices or statements.  (*Id.* ¶¶ 34-35.)  Vasquez was always paid in cash (*id.* ¶ 14), but he does not claim that he was charged a "cash convenience fee" or otherwise incurred a 25% reduction in his pay.

**Procedural Background And The Instant Motion**

Plaintiffs commenced the action on June 3, 2022.  (Dkt. 1.)  Defendant answered on June 30, 2022.  (Dkt. 23.)  On April 14, 2023, the parties consented to Magistrate Judge jurisdiction for all purposes.  (Dkt. 44.)  The Court entered a case management plan and scheduling order on May 31, 2023.  (Dkt. 52.)  On September 29, 2023, Plaintiffs filed their Amended Complaint.[5]  (Dkt. 53.)  The Amended Complaint alleges that Defendants engaged in unlawful employment practices, including retaining tips belonging to tipped "front-of-house" employees,

---

[5] Although Defendants filed an Answer in response to the initial Complaint (Dkt. 23), the record does not reflect filing of an answer to the Amended Complaint.

"shaving time" of both front-of-house and back-of-house employees by not paying them for time worked before and after their shifts and during breaks that they did not take; failing to pay overtime to both front-of-house and back-of-house workers for hours worked in excess of 40 hours per week; and retaliating against employees who inquired about the amount of tips they were supposed to receive – all in violation of the FLSA and NYLL.  Additionally, Plaintiffs claim that Defendants failed to provide accurate wage statements or even wage statements at all in violation of the NYLL.  Plaintiffs claim that Defendants misconduct is the result of  common policies and practices applying to all back-of-house and front-of-house employees not otherwise exempt from the wage requirements.   As relief, Plaintiffs seek damages, liquidated damages, interest, and recovery of attorney's fees and costs. Plaintiffs also seek certification of a class action pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") and a collective action pursuant to the FLSA.

Plaintiffs filed the instant motion on October 11, 2024, to conditionally certify a collective action for their FLSA claims.  The motion papers include a Memorandum Of Law In Support (Dkt. 80) ("Pl. Mem."), as well as declarations from former employees, Soonja Son (server), Mi Ae Kang (server), In Hyeong Sur (kitchen worker), Kyo Ok Goo (cook), Heesun Hwang (server), and Juan Carlos Vazquez (dishwasher).  On November 20, 2024, Defendants filed a Memorandum Of Law In Opposition (Dkt. 86) ("Def. Opp.").  Plaintiffs filed their Reply Memorandum Of Law In Support (Dkt. 89) ("Pl. Reply") on December 23, 2024, at which point the motion was fully briefed.

In addition to moving for conditional certification of an FLSA collective action,

Plaintiffs request that the Court approve their proposed notice and "opt-in" form to be sent to prospective members of the collective.  Plaintiffs also request that the Court invoke equitable tolling of the statute of limitations as of the date when Plaintiffs filed the instant motion until expiration of period during which plaintiffs may opt in to the collective action.  Defendants oppose, arguing that the declarations submitted by Plaintiffs do not support a finding that Defendants imposed a common improper pay practice or policy on employees, and that there are no exceptional circumstances warranting application of the equitable tolling doctrine.

## I.    Conditional Certification Is Warranted

Plaintiffs seek certification of a collective that includes "[a]ll current and former employees who worked at the restaurant Cho Dang Gol as servers, bussers, bartenders, kitchen workers, dishwashers, food preparers, cooks and/or other similarly situated positions at any time from October 11, 2021, through the date of trial."[6]  (Pl. Mem. at 2.)  The following discussion begins with an explanation of collective actions, the two-step process for certifying a collective action, and the standards a plaintiff must meet to warrant conditional certification.  Applying those principles, the Court finds that the requirements for conditional certification are met.

---

[6] The October 22, 2021 start date of the collective action period corresponds to a three year statute of limitations.  The statute of limitations under the FLSA is two years, but is extended to three years in cases where, as here, willful misconduct is alleged.  29 U.S.C. § 255(a).  District courts thus "routinely" apply the three-year statute of limitations to the collective action notice period when, as here, plaintiffs plead a willful violation of the FLSA.  *Cohen v. Gerson Lehrman Group, Inc.*, 686 F. Supp.2d 317, 331 (S.D.N.Y. 2010); *see, e.g.*, *Vasto v. Credico (USA) LLC*, No. 15-CV-9298, 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016) (approving a three-year limitations period in defining the scope of notice because plaintiffs alleged a willful violation of the FLSA).

**A.    The FLSA And Section 216(b) Collective Actions**

The FLSA was enacted to remediate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."  29 U.S.C. § 202(a).  "Among the bedrock principles of the FLSA is the requirement that employers pay employees for all hours worked." *Foster v. City of New York, New York*, No. 14-CV-4142, 2017 WL 11591568, at *17 (S.D.N.Y. Sept. 30, 2017) (quoting *Smiley v. E.I. Dupont De Nemours & Co.,* 839 F.3d 325, 330 (3d Cir. 2016)); *see* 29 C.F.R. § 778.223 ("Under the Act an employee must be compensated for all hours worked").

The FLSA imposes requirements for both minimum wage and overtime wage.  The statute thus requires that any employee who is not statutorily exempt be paid at least the federal statutory minimum wage for the first 40 hours of work in a given week, *see* 29 U.S.C. § 206(a), and that they receive "a rate not less than one and one-half times the regular rate at which he is employed" for overtime, or time worked in excess of 40 hours per week.  29 U.S.C. § 207(a)(1).  "Under neither [the FLSA nor the NYLL] will a fixed salary be deemed to include an overtime component in the absence of an express agreement."  *Francois v. Mazer*, No. 09-CV-3275, 2012 WL 653886, at *4 (S.D.N.Y. Feb. 28, 2012) (citing *Wong v. Hunda Glass Corp.*, No. 09-CV-4402, 2010 WL 2541698, at *2 (S.D.N.Y. June 23, 2010)).

To establish liability under the FLSA for unpaid overtime, "'a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work.'"  *Campbell v. City of New York*, No. 16-CV-8719, 2020 WL 2792978, at *3 (S.D.N.Y. May 29, 2020)

(quoting *Perry v. City of New York*, No. 13-CV-1015, 2018 WL 1474401, at *4 (S.D.N.Y. March 26, 2018)) (quoting *Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 361 (2d Cir. 2011)).  "'[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours.'"  *Foster*, 2017 WL 11591568, at *17 (quoting *Kuebel*, 643 F.3d at 363).)  Any "'contrary conclusion would undermine the remedial goals of the FLSA.'"  *Id.* (quoting *Kuebel*, 643 F.3d at 364).

The FLSA allows workers to initiate collective actions to recover minimum and overtime wages for themselves and on behalf of similarly situated employees. *See* 29 U.S.C. § 216(b).  The statute provides in pertinent part:

> An action … may be maintained against any employer … in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id*.  Rather than merely being a procedural mechanism like a class action under Rule 23, § 216(b) of the FLSA establishes a "right" to employees to collectively join in an action.  *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515 (2d Cir. 2020).

Designating a "collective" in an FLSA action differs from certification of a class action under Rule 23 in that potential FLSA collective members must affirmatively opt into, rather than opt out of, the litigation.  *See Lianhua Weng v. Kung Fu Little Steamed Buns Ramen Inc.*, No. 17-CV-273, 2018 WL 1737726, at *2-3 (S.D.N.Y. March 26, 2018) (discussing the differences between an FLSA

collective action and a Rule 23 class action); *Contrera v. Langer*, 278 F. Supp.3d 702, 713 (S.D.N.Y. 2017) (same).  Moreover, a proposed FLSA collective need not meet the Rule 23 prerequisites of numerosity, typicality, commonality, and representativeness.  *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 111 (S.D.N.Y. 2015); *see also Lianhua Weng*, 2018 WL 1737726, at *2; *Contrera*, 278 F. Supp.3d at 713.

**B.    The Two-Step Collective Certification Process**

The FLSA itself "does not prescribe any procedures for approval of collective actions."  *Contrera*, 278 F. Supp.3d at 712 (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169, 110 S. Ct. 482, 485 (1989)).  However, "district courts 'have discretion, in appropriate cases, to implement [Section 216(b)] … by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs."  *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (alterations in original) (quoting *Hoffmann-La Roche*, 493 U.S. at 169).  "Orders authorizing notice are sometimes referred to as orders 'certifying' a collective action, even though the FLSA does not contain a certification mechanism."  *Contrera*, 278 F. Supp.3d at 712 (citing *Myers*, 624 F.3d at 555 n.10).

The Second Circuit has endorsed a two-step method used by district courts in determining whether to exercise their discretion to certify a collective action under Section 216(b) and to permit notice to be sent to potential opt-in plaintiffs.  *Myers*, 624 F.3d at 554-55 (referring to the two-step process as "sensible"); *see also Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016) ("In *Myers*, we endorsed a two-step process for certifying FLSA collective actions"); *Hamadou v.*

*Hess Corp.*, 915 F. Supp.2d 651, 660-61 (S.D.N.Y. 2013) (discussing and applying the two-step process); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp.2d 317, 321 (S.D.N.Y. 2007) (same).

At the first step – the present stage of the instant litigation – a district court may "mak[e] an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555 (citing *Damassia v. Duane Reade, Inc.*, No. 04-CV-8819, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006)); *see also Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (same). Thus, "[t]he threshold issue in deciding whether to authorize class notice in an FLSA action is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'" *Sbarro,* 982 F. Supp. at 261; *Islam v. LX Avenue Bagels, Inc.*, No. 18-CV-4895, 2019 WL 5198667, at *3 (S.D.N.Y. Sept. 30, 2019) (Lehrburger, M.J.) (same).

At the second stage of certification, which occurs at a future juncture that the instant case has not yet reached, "with the benefit of additional factual development, the district court determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs." *Glatt*, 811 F.3d at 540 (citing *Myers*, 624 F.3d at 555); *see Genxiang Zhang v. Hiro Sushi at Ollie's Inc.*, No. 17-CV-7066, 2019 WL 699179, at *5 (S.D.N.Y. Feb. 5, 2019) ("After discovery is complete, the court will evaluate the full record before it, in order to determine whether the opt-in plaintiffs are, in fact, similarly situated") (citing *Fasanelli*, 516 F. Supp. 2d at 321). At the second stage,

"[t]he action may be 'de-certified' if the record reveals that [the opt-in plaintiffs] are not [similarly situated], and the opt-in plaintiffs' claims may be dismissed without prejudice." *Myers*, 624 F.3d at 555.

## C.    "Similarly Situated"

"Neither the FLSA nor its implementing regulations define the term 'similarly situated.'" *Sbarro*, 982 F. Supp. at 261.  The Second Circuit, however, has set the standard for determining whether employees are similarly situated under the FLSA. "[T]o be 'similarly situated' means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation. … That is, party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Scott*, 954 F.3d at 516.

The Second Circuit explained that the similarly situated requirement is a low bar, noting that "'the FLSA not only imposes a lower bar than Rule 23 [of the Federal Rules of Civil Procedure], it imposes a bar lower in some sense even than Rules 20 and 42, which set forth the relatively loose requirements for permissive joinder and consolidation at trial.'" *Id*. at 520 (quoting *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1112 (9th Cir. 2018)).  In arriving at the standard, the court emphasized that the "goal in granting employees the right to proceed as a collective was to provide them 'the advantage of lower individual costs to vindicate rights by the pooling of resources' and thus achieve "'efficient resolution in one proceeding of common issues of law and fact ….'" *Id*. at 515-16 (quoting *Hoffmann-La Roche*, 493 U.S. at 170).

14

To further understand the similarly situated standard, it is helpful to consider the earlier standard that the Second Circuit rejected. Before *Scott*, district courts applied a flexible "ad hoc" approach based on three factors: "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against collective action treatment." *Scott*, 954 F.3d at 517 (internal quotation marks and citation omitted). The Court of Appeals found that approach problematic because it focused on "the ways in which the plaintiffs are factually ***disparate*** and the defenses are ***individualized***" instead of "considering the ways in which the opt-in plaintiffs are ***similar*** in ways material to the disposition of their FLSA claims." *Id.* (emphasis in original). The Court expressed particular concern that the ad hoc approach "'invites courts to import, through a back door, requirements with no application to the FLSA,' like Rule 23(a)'s requirements of adequacy and typicality and Rule 23(b)(3) requirements of superiority and predominance."[7] *Id.* (quoting *City of Los Angeles*, 903 F.3d at 1115). Rule 23's requirement that common questions of law and fact "predominate" is quite distinct from – and a "'much higher threshold'" than – the similarly situated requirement of the FLSA. *Id.* at 518 (quoting *Myers*, 624 F.3d at 555-56).

**D. Plaintiffs' Burden To Support Conditional Certification**

To demonstrate that a collective should be conditionally certified, "[t]he

---

[7] The decision in *Scott* was not unanimous. The dissent would have adopted the ad hoc approach, and deemed the majority's "newly minted definition" of similarly situated too low a bar in that it requires only "***one or more***" material issues of law or fact. *Scott*, 954 F.3d at 522 (emphasis in original).

burden on plaintiffs is not a stringent one, and the Court need only reach a preliminary determination that potential plaintiffs are 'similarly situated.'" *Sbarro*, 982 F. Supp. at 261; *see also Hamadou*, 915 F. Supp.2d at 661 (describing the burden as "very low" or "minimal") (quoting *Raniere v. Citigroup Inc.*, 827 F. Supp.2d 294, 319 (S.D.N.Y. 2011) and *Damassia*, 2006 WL 2853971, at *3).    "The leniency of this requirement is consistent with the broad remedial purpose of the FLSA." *Morales v. Plantworks, Inc.*, No. 05-CV-2349, 2006 WL 278154, at *2 (S.D.N.Y. Feb. 2, 2006) (citing *Sbarro*, 982 F. Supp. at 262).

Plaintiffs can meet their burden at the conditional certification stage by "relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Hamadou*, 915 F. Supp.2d at 661 (quoting *Raniere*, 827 F. Supp.2d at 319). For this initial stage, courts "regularly rely on … hearsay statements." *Salomon v. Adderley Industries, Inc.*, 847 F. Supp.2d 561, 563 (S.D.N.Y. 2012).

That said, a plaintiff cannot satisfy their burden with "unsupported assertions," *Myers*, 624 F.3d at 555, or statements that are merely "conclusory." *Morales*, 2006 WL 278154, at *2; *see also Huertero-Morales v. Raguboy Corp.*, No. 17-CV-2429, 2017 WL 4046337, at *3 (S.D.N.Y. Sept. 12, 2017) (denying conditional certification because plaintiff's statements regarding other employees were made in "only the most general terms and with scant factual support"); *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp.3d 474, 481 (S.D.N.Y. 2016) ("Conclusory allegations are not sufficient to support a motion for conditional collective action certification").

Importantly, "[i]n ascertaining whether potential opt-in plaintiffs are similarly situated" at the conditional certification stage, "courts should not weigh the merits of the underlying claims." *Hamadou*, 915 F. Supp.2d at 662 (citing *Lynch v. United Services Automobile Association*, 491 F. Supp.2d 357, 368 (S.D.N.Y. 2007)); *see also Islam*, 2019 WL 5198667, at *4 (same). "At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Lynch*, 491 F. Supp.2d at 368; *see also Fasanelli*, 516 F. Supp.2d at 322 (the "preliminary documents" assessed at the first stage of certification "necessarily contain unproven allegations").

A plaintiff's factual allegations sometimes may be sufficient with respect to only a subset of employees within the proposed collective. In that event, "[c]ourts performing the collective action certification inquiry have discretion to certify a different group of individuals than that sought by the plaintiff." *Guan Ming Lin v. Benihana National Corp.*, 275 F.R.D. 165, 172 (S.D.N.Y. 2011); *see, e.g.*, *Genxiang Zhang*, 2019 WL 699179, at *7-8 (granting conditional certification but narrowing the job categories included in the collective); *She Jian Guo v. Tommy's Sushi Inc.*, No. 14-CV-3946, 2014 WL 5314822, at *4 (S.D.N.Y. Oct. 16, 2014) (same).

## E.    Application

One of the quintessential ways by which plaintiffs can establish a basis for collective certification is to make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Sbarro*, 982 F. Supp. at 261; *see also Myers*, 624 F.3d at 555 (same); *Kornblum v. Citigroup, Inc.*, 195 F. Supp.3d 475, 479 (S.D.N.Y. 2016)

("The key element of [the similarly-situated showing] is a shared unlawful policy"). Plaintiffs have satisfied that modest burden here.

All three named Plaintiffs allege that they were subject to at least some of the same illegal pay practices at the Restaurant. Those include not having been paid for all hours worked, manipulation of their clocked hours, and not being paid overtime pay for work performed in excess of 40 hours per week. Each of those practices, if proven, violates the FLSA.[8] The three named Plaintiffs are similarly situated to each other, and would be to other non-exempt employees, with respect to those practices.

Courts have recognized that an affidavit from a single employee may be sufficient to establish the basis for conditional certification. *See Hernandez v. Bare Burger Dio Inc.*, No. 12-CV-7794, 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) ("Indeed, courts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit"). While it may be questionable whether any of the named Plaintiff's affidavits standing alone would be sufficient to do so, that scenario is not presented here. Rather, three individual employees have each provided sworn declarations that corroborate ostensibly common pay practices. As such, they have provided a sufficiently firm foundation for conditional certification. *See Tueros v. Urban Health Plan*, *Inc.*, No.

---

[8] Each Plaintiff also avers not to have received pay for the so-called "spread of hours" (i.e., an extra hour of pay when the total hours exceed 10 hours in a day) or proper wage notices and statements. Those violations, however, implicate only the NYLL, not the FLSA, and may be fodder for a motion for class certification pursuant to Rule 23. Accordingly, the Court does not consider them in the context of determining whether Plaintiffs are similarly situated to other employees for purposes of conditional certification under the FLSA. *See* 29 U.S.C. § 216(b) (authorizing collective actions for violations provisions of the FLSA).

21-CV-4525, 2022 WL 2752070, at *10 (S.D.N.Y. 2022) (conditionally certifying collective where three employees provided testimony corroborating each other, indicating they were subject to the same policies and practice); *Islam*, 2019 WL 5198667, at *3 ("both Islam and Siddik have provided declarations attesting to the policy applied to the other employees; in other words, each corroborates the other, which creates a firmer foundation"); *Garcia v. Spectrum of Creations*, 102 F. Supp.3d 541, 548-49 (S.D.N.Y. 2015) ("Here, of course, there are two employees who corroborate each other's personal treatment and observations of the treatment of other employees").

To be sure, there are differences among the Plaintiffs.  Son and Kang are front-of-house servers, whereas Sur is back-of-house kitchen worker.  That difference, by itself, does not diminish the similarity they have to each other and other front-of-house employees or back-of-house employees who were subject to the same common practices. *See Lujan v. Cabana Management*, No. 10-CV-0755, 2011 WL 317984, at *10 (E.D.N.Y. Feb. 1, 2011) (declining to limit collective to bussers and runners because allegations of a policy applied across job classifications "suggest[s] a distinction without a difference").  Indeed, where a common illegal pay practice or policy applies, courts have granted conditional certification of collectives comprised of both back-of-house and front-of-house workers.[9]  *E.g.*, *Garcia Ramos v. DNC Food Service Corp.*, No. 19-CV-2967, 2020

---

[9] The two cases Defendants cite for the proposition that certification should be denied where plaintiffs' claims and roles lack alignment are not helpful to them. In *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 535, 540 2d Cir. 2016), the court announced a new test for determining when an unpaid intern is entitled to compensation as an employee under the FLSA and remanded the case to the district court to consider anew whether conditional certification was appropriate

WL 2832776, at *6 (S.D.N.Y. June 1, 2020) (conditionally certifying a collective on claim for failure to pay overtime to "a range of employees – including front-of-house employees such as cashiers, countermen, deliverymen, salad makers, grillmen, and porters; and back-of-house employees like bread makers, food prep cooks, and cooks; in other words, every conceivable type of employee of a delicatessen"); *Romero v. La Revise Associates, L.L.C.*, 968 F. Supp.2d 639, 648 (S.D.N.Y. 2013) (certifying collective as to "tipped employees (including runners, bussers, waiters, barbacks and bartenders) and kitchen staff (including chefs, cooks, food preparers, dishwashers and porters)" where defendants provided no explanation as to why the proposed definition was overbroad); *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12-CV-8629, 2013 WL 5211839, at *4 (S.D.N.Y. Sept. 16, 2013) (granting conditional certification on overtime claim with respect to all employees of sushi restaurant); *see generally Cano v. Four M Food Corp.*, No. 08-CV-3005, 2009 WL 5710143, at *7 (S.D.N.Y. Feb. 3, 2009) (collecting cases holding that to be similarly situated for purposes of collective certification, plaintiffs and other employees do not need to perform the same job if they were all subject to the same policy).

The distinction between back-of-house and front-of-house employees is, however, relevant to other pay practices at the Restaurant. In particular, Son and Kang, like other front-of-house employees were paid partly in tips; back-of-house employees such as Sur were not tipped employees. Son and Kang each describe

---

when the new test is applied. *Glatt* therefore is inapt. In *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp.2d 545, 559-60 (S.D.N.Y. 2013), the court granted conditional certification of a collective made up of cashiers and kitchen workers while declining to extend the collective to all of defendant's store locations. That issue is not present here as, explained below, Plaintiffs do not seek certification of a collective including any of Defendants' restaurants beyond Cho Dang Gol.

how they did not receive all the tips they earned, and their assertions are echoed by Hwang, the plaintiff server in the *Goo* Action.  The servers also explain how they learned that they – and other tipped employees, not limited to servers – were not being paid all their tip money.  (*See* Son Decl. ¶ 17; Kang Decl. ¶¶ 18-20; Hwang Decl. ¶¶ 11-14.)  The named Plaintiffs thus have set forth evidence of multiple allegedly improper pay practices applicable to all employees at the Restaurant, as well as an additional allegedly improper pay practice applicable to all tipped employees.  Again, the fact that there are pay practices unique to one group of similarly situated employees does not take away from the fact of there being multiple pay practices applicable to all non-exempt employees.  As emphasized by the Second Circuit in *Scott*, the relevant focus of inquiry is not on disparities between employees but instead "the ways in which the opt-in plaintiffs are **similar** in ways material to the disposition of their FLSA claims."[10]  *Scott*, 954 F.3d at 517 (emphasis in original).

The declarations submitted by Plaintiffs from the three former employees engaged in other lawsuits against Defendants both do and do not corroborate the named Plaintiffs' description of common pay practices.  For instance, server Hwang indicates that she was subject to the same retention of tips and lack of documentation as Son and Kang (Hwang Decl. ¶¶ 11-14), but her declaration does not state whether or not she was properly paid for overtime.  Kitchen-worker Goo, like Sur, asserts that Defendants did not pay Goo for all hours worked, manipulated

---

[10] Similarly, the fact that one or more of the named Plaintiffs assert individual claims for retaliation does not eliminate the material ways in which the named Plaintiffs and opt-in plaintiffs are similar to each other for purposes of conditional certification.

Goo's clocked hours, did not pay Goo overtime, and deducted a "cash-conversion" fee (Goo Decl. ¶¶ 5, 8, 10), but does not reference the same violations of the NYLL (i.e., failure to pay for spread of hours and to provide wage notices and statements). As noted above, however, the collective certification analysis focuses on the FLSA claims.  In that respect, Goo and Sur attest to the same common pay practices.  In contrast, kitchen-worker Vasquez claims he was not paid overtime but does not mention not being paid for all hours, manipulation of hours, or a cash-conversion deduction.  Vasquez's declaration, however, has little relevance as it describes events up through only June 2020, while the relevant time period in the instant case starts with October 2021.  (*See* Vasquez Decl. ¶¶ 13, 31.)  Whatever pay practices were in effect in June 2020 were not necessarily in effect more than a year later, and pay practices that were in effect as of October 2021 may not have been in effect in June 2020.  Overall, then, the Court finds that the declarations of Goo and Hwang largely support a finding of common pay practices and that the declaration of Vasquez is largely irrelevant to the conditional certification inquiry.

In their briefing, Defendants do not engage in any meaningful analysis, and, in ironically conclusory fashion, assert that Plaintiffs' declarations are overly conclusory.  (*See* Def. Opp. at 6.)  Some of the statements in some of the declarations are indeed conclusory, but taken together, they provide enough substance and corroboration of each other to meet the modest burden required to support conditional certification.  That is especially so with respect to improper retention of tips for front-of-house employees, improper deduction of a cash conversion fee for kitchen workers, and, for both front-of-house and back-of-house

employees, manipulation of hours recorded and failure to pay for all hours worked. Defendants also argue that Plaintiffs have failed to demonstrate a common policy or practice because "they fail to connect the[ir] allegations to a centralized policy or practice affecting all employees across Defendants' establishments." (*Id*. at 5.) That is a proverbial strawman argument; Plaintiffs are not seeking conditional certification of employees beyond the one Restaurant. (*See* Pl. Reply at 2 ("Plaintiffs are not pursuing a collective across all of Defendants' establishments. Plaintiffs specifically limited their collective to Cho Dang Gol").)

The Court recognizes that the documents presently before it necessarily contain unproven allegations and that "in resolving this motion, the Court assumes all non-conclusory facts alleged by [P]laintiffs to be true." *Vasto*, 2016 WL 2658172, at *3 n.1. The second certification stage may well warrant a different outcome depending on the record developed at that time. But at this preliminary, conditional stage, the low bar to certification is met. Particularly given the Second Circuit's requirement that plaintiffs in a collective action need only share "a similar issue of law or fact material to the disposition of their FLSA claims," the Court readily concludes that – at this preliminary stage – conditional certification is warranted. *Scott*, 954 F.3d at 516.

As conditional certification is warranted, the Court next addresses Plaintiffs' request for approval of their proposed notice and opt-in form.

## II.    Notice

Once a court finds that a named plaintiff has satisfied his or her burden at the conditional certification stage, the court "may proceed to authorize issuance of

a notice informing potential additional plaintiffs of their opportunity to opt into the lawsuit." *Liping Dai*, 2018 WL 4360772, at *5 (citing *Lynch*, 491 F. Supp.2d at 367). Although the FLSA itself "has no provision for issuing notice in a collective action, it is 'well settled' that district courts have the power to authorize an FLSA plaintiff to send such notice to other potential plaintiffs." *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp.2d 101, 104 (S.D.N.Y. 2003) (quoting *Sbarro*, 982 F. Supp. at 261). No authority "ha[s] specifically outlined what form court-authorized notice should take nor what provisions the notice should contain." *Fasanelli*, 516 F. Supp.2d at 323 (noting also that in *Hoffmann La-Roche*, the Supreme Court "abstained from reviewing the contents of a proposed notice under § 216(b)"). District courts thus possess "broad discretion," to "monitor[ ] preparation and distribution of the [n]otice to ensure that it is timely, accurate, and informative." *Tommy's Sushi*, 2014 WL 5314822, at *4 (first alteration in original) (internal quotation marks omitted) (quoting *Hoffmann La-Roche*, 493 U.S. at 172). In utilizing their discretion to approve the details of notice, "courts should consider the overarching policies of the notice provisions of Section 216(b) … which include achieving judicial efficiency and lowering individual costs for plaintiffs." *Liping Dai*, 2018 WL 4360772, at *6 (citing *Fasanelli*, 516 F. Supp.2d at 323).

Here, Plaintiffs have proposed forms of notice to be sent by mail, email, and text; a form of notice to be posted at the Restaurant, and a form for collective members to opt in. (*See* Smith Decl. Exs. 10-14.) Defendant has not challenged the form and content of the notices and opt-in form proposed by Plaintiffs. Regardless, the Court has reviewed them and believes that certain edits are

warranted in order to avoid confusion as well as to correct certain typographical errors.  Specifically, the Notice of Lawsuit by mail (Dkt. 80-10) should be revised as follows:  (i) First page, second bulleted item; replace "who has" in third line with "and have"; and replace "all" on fourth line preceding "minimum" with "unpaid" so that it reads "… seek payment of unpaid minimum wages, overtime and unlawfully retained gratuities"; (ii) Page three, item 6; at the very end add a period after "separately."  Both the Notice by Email (Dkt. 80-12) and the Notice by Text (Dkt. 80-13) should be modified as follows:  (i) in the first paragraph, fourth line, replace "all" with "unpaid" before "minimum"; (ii) delete "THE HONORABLE ROBERT W. LEHRBURGER," in the last paragraph.  The Notice to be posted (Dkt. 10-14) should be modified as follows:  in both the second and third paragraphs, replace "all" with "unpaid" before "minimum."

Subject to those modifications, the proposed notices and consent form are acceptable to the Court.

### III.    Equitable Tolling

Plaintiffs also ask the Court to issue an order tolling the statute of limitations for all potential opt-in plaintiffs from October 11, 2024 – when Plaintiffs filed their motion for collective certification – through the close of the notice period, being 90 days from mailing of notice.  (*See* Dkt. 80-15 at 2, item (e); Pl. Mem. at 17.) Defendants oppose this request on the grounds that Plaintiffs have not identified any extraordinary circumstances that warrant tolling the statute of limitations and that Plaintiffs unduly delayed in seeking conditional certification.  (*See* Def. Opp. at 6-7.)

"Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Johnson v. Nyack Hospital*, 86 F.3d 8, 12 (2d Cir. 1996) (citing *Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 264 (2d Cir. 1990)). The Second Circuit has cautioned that "equitable tolling is considered a drastic remedy applicable only in 'rare and exceptional circumstance[s],'" *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011) (alteration in original) (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)), "where a plaintiff has been 'prevented in some extraordinary way from exercising his rights.'" *Johnson*, 86 F.3d at 12 (quoting *Miller v. International Telephone and Telegraph Corp.*, 755 F.2d 20, 24 (2d Cir. 1985), *cert. denied*, 474 U.S. 851, 106 S. Ct. 148 (1985)).

At the same time, it has been observed that "[i]n the Second Circuit ... equitable tolling is commonly granted upon the filing of a motion for conditional certification of a collective action." *Varghese v. JP Morgan Chase & Co.*, No. 14-CV-1718, 2016 WL 4718413, at *11 (S.D.N.Y. Sept. 9, 2016). For instance, equitable tolling "might apply ... where the defendant has concealed the existence of a cause of action from the plaintiffs." *Mark v. Gawker Medica LLC*, No. 13-CV-4347, 2014 WL 5557489, at *2 (S.D.N.Y. Nov. 3, 2014); *see also Viriri v. White Plains Hospital Medical Center*, 320 F.R.D. 344, 355 (S.D.N.Y. 2017) ("The most common circumstance where equitable tolling might apply to FLSA actions is where the defendant has concealed the existence of a cause of action from the plaintiffs"). Courts have also equitably tolled the FLSA statute of limitations in cases where "courts' heavy dockets and understandable delays in rulings" could time bar opt-in

plaintiffs "whose putative class representatives and their counsel are diligently and timely pursuing the[ir] claims." *McGlone v. Contract Callers, Inc.*, 867 F. Supp.2d 438, 444-45 (S.D.N.Y. 2012); *accord Contrera*, 278 F. Supp.3d at 724 ("the test for equitable tolling is not concerned with the diligence of a plaintiff who has already timely filed a claim, but rather with the diligence of a plaintiff who is seeking the application of the doctrine").

Courts in this district have not agreed upon any standard length of delay that warrants equitable tolling. *Compare Viriri*, 320 F.R.D. at 355-56 (granting equitable tolling due to six-month period between fully briefed motion for conditional certification and court's order), and *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170-71 (S.D.N.Y. 2014) (declining to adopt a "piecemeal approach" and granting equitable tolling when "more than seven months" had elapsed between fully briefed motion and court's order), *with Vasto*, 2016 WL 2658172, at *16 (court's five-month delay "not of a magnitude that would justify tolling"), and *Mark*, 2014 WL 5557489, at *3 (court's 11-month delay not sufficiently "extraordinary" to warrant equitable tolling).

The Court does not find that this case merits categorical equitable tolling of the statute of limitations for potential opt-in plaintiffs. Plaintiffs have not identified any "rare and exceptional" aspects of the case to justify equitable tolling. *A.Q.C. ex rel. Castillo*, 656 F.3d at 144 (quoting *Smith*, 208 F.3d at 17). They have not alleged that Defendants actively "concealed the existence of a cause of action from the [opt-in] plaintiffs." *Mark*, 2014 WL 5557489, at *2. Nor have Plaintiffs offered specific details as to any individual potential opt-in plaintiff who intends to join the collective

but who risks becoming time-barred or has been "prevented in some extraordinary way from exercising his rights." *Johnson*, 86 F.3d at 12 (quoting *Miller*, 755 F.2d at 24); *see, e.g., Liping Dai*, 2018 WL 4360772, at *12 ("Plaintiffs have not demonstrated that the claims of any potential opt-in plaintiffs would actually be barred") (citing *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp.2d 445, 450 (S.D.N.Y. 2011)); *Contrera*, 278 F. Supp.3d at 724 ("The plaintiffs on whose behalf equitable tolling is being sought have not been identified ... no specific information has been provided about any particular opt-in plaintiff's circumstances. Thus, this Court cannot assess whether any potential opt-in plaintiff has diligently pursued his or her rights.")

Further, there has been minimal to no "delay" in the Court's ruling, let alone a "substantial gap," *Viriri*, 320 F.R.D. at 355, under any of the benchmarks set forth above.[11]  As of the date of this order, less than four months have passed since the filing of Plaintiffs' motion, and less than two months since the parties completed their briefing on the motion.  In short, the Court finds no basis to pre-emptively invoke equitable estoppel as to all potential opt-in plaintiffs.  "At the second stage of certification, if it becomes apparent that equitable tolling arguments apply to individual plaintiffs who have opted into this litigation, the Court can timely address those issues." *Tueros*, 2022 WL 2752070, at *17; *accord Trinidad*, 962 F. Supp.2d at 564 n.14.

---

[11] Nor does the Court find any undue delay in Plaintiffs' filing their motion for conditional certification as Defendant posits.  (Def. Opp. at 7.)  But diligence alone does not warrant application of equitable estoppel; rather, as explained above, equitable estoppel also requires extraordinary circumstances.

**Conclusion**

For the foregoing reasons, Plaintiffs' motion to conditionally certify an FLSA collective action is GRANTED in part and DENIED in part as follows:

1.      Defendants shall provide contact information (names, last known home addresses, cell phone numbers, and email addresses) for the conditionally certified FLSA collective within ten (10) days of this Order;[12]

2.      Plaintiffs' counsel shall modify the notices of pendency as set forth above;

3.      Plaintiffs' counsel shall disseminate all notices of pendency as described herein to the conditionally certified FLSA Collective within twenty-one (21) days of this Order;

4.      The notice period shall remain open for a period of ninety (90) days from the issuance of the notices of pendency;

5.      The workplace notice of pendency shall be posted in the Restaurant within seven (7) days of this Order and remain up through the end of the notice period;

6.      Plaintiffs' request to equitably toll the statute of limitations is denied at this time without prejudice to further consideration of individual circumstances

---

[12] Neither party addressed this aspect of Plaintiffs' proposed relief; *i.e.*, requiring Defendants to produce the names, last known addresses, cell phone numbers and email addresses for potential opt-in plaintiffs.  Regardless, "courts in this district 'commonly grant requests for the production of such information[ ] in connection with the conditional certification of an FLSA collective action.'"  *Tay v. New York and Presbyterian Hospital*, No. 22-CV-8379, 2024 WL 4286226, at *16 (S.D.N.Y. 2024) (quoting *Liping Dai v. Lychee House, Inc.*, No. 17-CV-6197, 2018 WL 4360772, at *12 (S.D.N.Y. Aug. 29, 2018)).  The Court finds that requiring Defendants to produce the requested contact information here is warranted as it is necessary to send notice to potential members of the collective.

following the end of the notice period.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:  February 18, 2025
        New York, New York

Copies transmitted to all counsel of record.